UNITED FARM BUREAU MUTUAL INSURANCE CO.
*v.* ADAMS, ET UX.

[No. 968A162. Filed October 22, 1969. No petitions for rehearing or transfer filed.]

*Peter L. Obremskey, Parr, Richey, Obremskey & Pedersen,* of Lebanon, for appellant.

*William G. Baars, George E. Martz, Johnson, Weaver & Martz,* of Indianapolis, for appellees.

SHARP, J.—The Appellant-plaintiff, United Farm Bureau Mutual Insurance Company, filed its action seeking a declaratory judgment under the terms of a policy for automobile liability insurance. The trial court denied the relief sought by the Appellant's Complaint. The contract of insurance between Appellant and Appellees was for the term January 28, 1967, to July 28, 1967.

Appellant's Complaint alleged in substance that for continued coverage under the policy in question Appellees were to remain members in good standing in the Indiana Farm Bureau, Appellant's parent corporation, and Appellees failed to do this by letting their dues lapse; that Appellant notified Appellees by letter dated April 3, 1967, that the contract between them was cancelled, effective 12:01 A.M., April 15, 1967, pursuant to the terms of the policy; that the Appellees were involved in an automobile accident on or about August 29, 1967, and were demanding coverage under the insurance policy; that the rights of the parties should be determined.

The Appellees filed answer in admission and denial under Rule 1-3 of the Supreme Court. They denied receipt of the notice of cancellation.

The cause was tried by the court without a jury, resulting in a judgment for Appellees. The basis for Appellant's Motion for New Trial was that the decision was not sustained by the evidence and was contrary to law. The Motion for New Trial was overruled and is the sole assignment of error here.

The judgment before us is a negative verdict. Since the burden of proof was on Appellant, he cannot challenge the decision as not being supported by the evidence. *Hinds, Executor Etc.* v. *McNair, et al.*, 235 Ind. 34, 41, 129 N. E. 2d 553 (1956) ; *Yingst, Spec. Admin.* v. *Pratt*, 139 Ind. App. 695, 708, 220 N. E. 2d 276 (1966) ; *State Farm Life Insurance Co.* v. *Spidel*, 246 Ind. 458, 202 N. E. 2d 886

(1964). However, Appellant's second assignment of error, that the verdict is contrary to law, is valid. The rule to be used in determining whether a verdict is contrary to law is succinctly stated in *Hinds, Executor Etc.* v. *McNair, et al.:*

> "If the undisputed evidence entitles the one who has the burden of proof to a verdict which has been denied him, such verdict is contrary to law. To determine this question we may consider only the evidence most favorable to the appellees, together with all reasonable inferences which may be drawn therefrom.
>
> " 'It is only where the evidence is without conflict and can lead to but one conclusion, and the trial court has reached an opposite conclusion, that the decision of the trial court will be set aside on the ground that it is contrary to law.' " 235 Ind. 34, 129 N. E. 2d at 558 (1955).

It is contended by Appellees that the judgment must be affirmed because the Appellants failed to prove the material allegations of their complaint by not proving that membership in good standing in the Indiana Farm Bureau was a prerequisite to continued insurance coverage by Appellant United Farm Bureau Mutual Insurance Company. The Cancellation Clause of the policy in question, under which Appellant acted, reads as follows:

"15. CANCELLATION

This policy may be cancelled by the insured named in Item 1 of the declarations by surrender thereof to the company or any of its authorized agents or by mailing to the company written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by the company by mailing to the insured named in Item 1 of the declarations at the address shown therein written notice stating when, not less than ten days thereafter, such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of the surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by such insured or by the company shall be equivalent to mailing.

If such insured cancels, earned premium shall be computed in accordance with the customary short rate table

and procedure. If the company cancels, earned premium shall be computed to pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after a cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation."

Nowhere in the insurance contract between the parties is there any mention of Indiana Farm Bureau or any prerequisite of this nature. Therefore, such a condition for insurance could not have been proved by Appellant, but in light of the cancellation clause just set out such proof was not necessary or essential to Appellant's cause of action. The allegation was mere surplusage in the complaint.

This court has previously accepted an identical cancellation in *Moore* v. *Vernon Fire and Casualty Company*, 142 Ind. App. 334, 234 N. E. 2d 661 (1968), by construing its effects in another situation. However, today such a clause permitting cancellation without reason is severely limited by the recently enacted provisions of Acts 1969, ch. 332, § 4, page 1402, Burns' Ind. Statutes Annotated, § 39-4316 (Cum. Supp. 1969). This statute may not be interpreted retroactively in violation of vested rights, and is therefore not applicable to this case.

The main issue before this court is whether the evidence that Appellant mailed the notice of cancellation is undisputed, without conflict and can lead only to the conclusion that Appellants did indeed mail the notice. In so doing, we must examine that evidence in a light most favorable to Appellee. However, before moving to that task, we are moved to remark that the method in which this question is brought before the court is very appropriate in light of the important policy considerations inherent in the situation. Notice of motor vehicle liability insurance cancellation touches an area of public interest far beyond the scope of the relationship of the parties before us. The dangers of driving uninsured vehicles are obvious. Not only may one be subjected to the risk of a large financial

liability at the hands of a negligently injured person, but the opportunity for that other injured party to gain a reasonable amount of damages for his injury is considerably lessened. It is for the benefit of every driver and passenger on our roads today, as well as ourselves, that we carry liability insurance. When this protection is being cancelled, public policy demands a strict compliance with the procedure involved so that the insured, or former insured, may be given reasonable opportunity to make other insurance arrangements before his old coverage is denied. See also, *Moore* v. *Vernon Fire and Casualty Insurance Company, supra.*

Relevant to the issue of mailing the notice, the Appellant introduced two documents into evidence at the trial. Plaintiff's Exhibit E was a list of names and addresses. Beside each name was a check and a short line, signifying the return of unearned premium check was enclosed, and that the letters and checks were properly matched and in order. In one corner of the paper is a postage meter strip showing $0.65 and a stamp in purple ink showing the date and town. This exhibit was introduced through the testimony of the office manager, who admitted he did not place the meter strip or the stamp upon the page, did not see it affixed, and did not then mail the letters himself. The exihibit was introduced not as proof of mailing, but as proof of the office procedure concerning the mass mailings of cancellations. There was no testimony as to where the meter strip and stamp were affixed. There was testimony that approximately 1200 such cancellation letters and checks were sent out on April 3, 1967, from the same office. In connection with Exhibit E it is pertinent to note there was no direct testimony by anyone who had taken the letters to the post office or by anyone who did the actual handling of the letters themselves. There was no signature at the bottom of the page by the employee whose duty it was to make sure the letters were mailed to either verify his act or to refresh his recollection. The Appellee, Ted S. Adams

testified without reservation that no notice of the cancellation was received.

Plaintiff's Exhibit F was a list of names and check numbers signifying checks issued by the Appellant which had not been cashed. The names of the Appellees and the amount and check number appear on the list. The fact that the check made out to the Appellees was not cashed is in no way helpful to Appellant in proving the letter containing the check was mailed.

Cases dealing with the presumption that a letter properly mailed will be received are brought to our attention by the Appellant. In *Continental Nat. Bank* v. *Discount, etc., State Bank,* 199 Ind. 290, 308, 157 N. E. 433, 439 (1927), our Supreme Court stated:

> "When the notes were received by the appellee bank is not shown. However, in the absence of anything to the contrary, we may assume that a letter properly stamped and mailed at Indianapolis to a bank at Kentland, Indiana, will be received by the latter in the usual course of mail not later than the second day thereafter."

*Siebe* v. *Heilman Machine Works,* 38 Ind. App. 37, 41, 77 N. E. 300, 302 (1905), presents the effects of a denial of receipt more clearly:

> "The record discloses that appellant Louis F. Siebe, within three days after he received the engine discovered defects in it; that certain parts of the machinery broke; that one of the axles bent, etc.; and that within that time he wrote a letter to appellee calling its attention to such defects, etc., placed the letter in an envelope addressed to appellee at Evansville, put a stamp upon it, and delivered the letter, thus addressed, to the United States post-office at Stendale. Appellee denied that it received such notice. This conflicting evidence tendered an issue of fact for the jury to determine. It is not contended that this letter was sent by registered mail, but the fact that it was written, properly stamped and mailed, if in fact it was, was prima facie evidence of its receipt by appellee. 1 Elliott, *Evidence,* § 107; *Home Ins. Co.* v. *Marple* (1891), 1 Ind. App. 411.

"  If appellee did receive this letter—and it was for the jury to say from the evidence, both positive and circumstantial, whether it did or not—and if the jury should determine that it did, then there was some evidence that would prevent the appellee from recovering."

These two cases accurately state the law of Indiana on the question of receipt of letters proved to have been mailed. However, in the case at bar the contract of insurance between the parties stated the mailing of notice was sufficient proof of notice. Therefore, the issue of receipt is factually irrelevant and the issue here turns exclusively upon proof of mailing.

After reviewing the evidence presented by Appellant, we cannot say as a matter of law that the evidence established the letter of cancellation was in fact mailed to the Appellees. This is an appeal from a negative verdict. The absences and lapses in the evidence leave room for doubt as to whether or not this one specific letter ever found its way to the post office. In this context the trial court could have properly determined that the Appellant did not sustain its burden of proof with reference to the issue of mailing.

Therefore, the judgment of the trial court must be and is affirmed.

Affirmed. Costs v. Appellant.

Pfaff, C.J., Hoffman and White, JJ., concur.

NOTE.—Reported in 251 N. E. 2d 696.